State Number 20-1325 NF, the City of Miami, Oklahoma, Petitioner v. Federal Energy Regulatory Commission. Mr. Gossett for the Petitioner, Ms. Rylander for the Respondent, Mr. Zetling for the Intervener. Thank you. Good morning, Your Honor. May it please the Court. Residents of Miami, Miami, Oklahoma, have for the last 30 years repeatedly had their homes, schools, and businesses flooded because of the operation of the Pensacola. In the orders under review, the Commission erred by continuing to kick the can down the road, failing to hold GRDAs in the terms of the existing license, and thus requiring GRDAs to obtain fluid licenses. I would like to put briefly on four points in my minutes on this note, and left the Court to reconvene. Standing, Section 76-12, the evidence for FERC, and FERC's referral of these issues to the license. On standing, GRDA argues that the city lacks standing because its injuries are not redressable given Section 76-12. This puts the cart before the horse and has no case support. Indeed, it is contrary to Milwaukee's Supreme Court's decision in Steele Court that made it self-sacred. If the city's reading of Section 76-12 is correct, FERC has the authority to grant us the legal receipt and thus can redress the city's injuries. Indeed, the distinction from the Wilderness Society case on which GRDA relies could not be more stark. In that case, the point was that the Court did not want to redress the Wilderness Society's injuries because, according to the wilderness society's views of the statute, all that the agency, the Federal Parks Service could do was request that the President request that Congress, in Congress's own discretion, designate a certain land as a wilderness area, not that the agency could designate those lands. Here, under our reading of the statute, FERC could have driven the Wilderness Society's injuries. In other words, you're saying the opponent has taken the hardest decision in terms of prosecuting the city. Respectively. You know what I'm most interested in, is the last point. The first position. That we're going to take care of this in our life and down the line. We should have discretion as to what procedures we use. We don't have to deal with the enforcement of the existing ones. We're going to take it up in the future. As now Chair Lick of the Commission said in his dissent, it's the dereliction of the Commission's duty not to uphold GRDH in terms of its current license. Isn't this a specific proposition of administrative law that wants to strive as an administrative sheltering in an agency, put a position with respect to enforcement of existing obligations, and instead, we'll take it up in the future rulemaking? Are you not familiar with this? I'm a little upset about it, but I wrote it. I'm not sure which case you mean, but it's certainly a proposition. AT&T versus MCI. Oh, sure. I'm familiar with that case. Why didn't you sign it? I'm sorry, Your Honor. There were more recent cases of the court addressing the same point, though it is certainly a case of proposition. I don't recall in which case you referred to it. Except that that case was affirmed in the Supreme Court. And the agency can't waive these words of dict. Well, it's legal to describe it as I described it as an administrative law sheltering. An agency cannot take the question of whether or not there is a violation of an existing rule by answering, well, we'll take it up in the future rulemaking. It's an execution, not an existing one. Your argument is this is a violation of the existing legislation. So it's not separate from the state. We'll take it up in the future. Isn't that correct? That is correct, and we should certainly have submitted that case, Your Honor. We did make precisely that point, and in response, the commission basically said, oh, you keep on saying this. We'll keep on saying we'll handle this later, and that is a jail game in a different sense in that it is just putting the burden of this flooding on the city of Miami over the course of the last 30 years because the city keeps on coming to Berkley, keeps on coming to GRDA and saying, please help, and they keep on saying, well, we'll deal with you later. Well, in other words, your basic argument is that the agency's position that we're taking this up in the future rulemaking, in the future licensing, is not separate from the existing legislation. The thing that's not separate is that it's non-separate. It's a non-separate because you're claiming that the existing legislation is violated. Yes, Your Honor, and their response is, we can do that nonetheless, and I agree that that is a non-separate, and that they should not be allowed to do that. And just because the same question may be relevant in relicensing doesn't mean that they don't have an obligation to determine it now, too. Indeed, the question whether GRDA is abiding to the terms of its current license is itself a relevant factor in the relicensing process. Among other things, it is one of the standard factors the Commission looks at to determine the length of a new license, if you were to grant a new license, between 30 and 50 years, or whether to grant a license in the first place. So, I do agree that it's a shoddy, in addition to being unfair. Now, what about the statute that Congress passed, which the agency plans to deal with, however I take it, the empty arguments that are fixed in. What about that statute? Do you think it's perfectly clear what it means? I do not think it is perfectly clear what it means. I do think that that's important to what's furthered. Of course, the Commission hasn't asserted an interpretation, so they don't make a temporary deference. But also, the lack of clarity is why the Article 28 rule gets, essentially, codification of the rule gets repealed by a petition versus a pledge. It's not clear. There couldn't be an interpretation of this provision under which we wouldn't be allowed redress. But because there is another interpretation that we've provided, under which we are intended to redress, and the Commission could order that redress, therefore, the Commission erred by not so interpreting the statute. The agency hasn't interpreted the statute. The agency hasn't interpreted the statute. That is a separate matter. We are ready for a remand. We are ready for a remand. We do think that there are sufficient areas in the Court such that the Court can also direct that remand in ways that will help direct the agency to proceed. Such as, for example, not to prorate for pre-licensing. This is not an expected interpretation of the language. We can't interpret that language ourselves. I do think that the Court can interpret that language for the Court. But you would think that the Court would also choose to proceed. But you can see that there is ambiguity. But the mere fact of ambiguity when the agency has asserted ambiguity or desire for inference shouldn't preclude this Court from interpreting the statute to non-fargo effect. But the amazing part of it was, the agency never interpreted the language at all. So that suggests you were claiming that it had to be remanded. The agency never interpreted the language, but also asserted that irrespective of everything else in the order, the language would apparently deny remand. We think it's an alternative basis for ruling against us. There is no explanation whatsoever for that interpretation. Which violates the principles of reasonable decision-making. But the agency's counsel, my friend Liz Ratner, has said that the agency didn't rely on the statute. So I think the Court would also accept this as a probability. Can you explain, if we're going to remand, if you said with some assurances, for example, that they should have told us into the rulemaking, were we to reach the meeting of 76-12 for some reason that you specified, how would you interpret it not to preclude ruling? The fundamental flaw with the GRDA's interpretation of that provision is that it asserts that project boundary is a curve that limits the Commission's authority on GRDA obligations. It is not. The project boundary is a descriptor that has existed for the last 20 or so years to make it easier for everyone to understand the plan. But it doesn't limit Article I or otherwise limit the Commission's authority on GRDA's obligations. And therefore, the provision that says you can't change the project boundary doesn't have that effect. It doesn't limit enforcement under Article V. And are you saying even if enforcement under Article V were to require acquisition of land or flowage rights from land, once that land is acquired, it doesn't necessarily affect the project boundary? Can you elaborate a little bit more? I see you nodding. Thank you. So what does the project boundary refer to distinct from the scope of rights and land that are in the control of the authority? Obviously, the project. I feel the two are really wrong. The Commission in 2003 amended its regulations about project boundaries to say we should have a project boundary fully encompass the land of the project. Before that, for example, minor projects, which are minor licensed projects, didn't even have a project boundary. So they could be the same, but they aren't. Because it is simply for the ease of everyone to know what the project encompasses. My understanding of your point all along has been the project boundary is not a limitation on the obligations of the licensee. Yes, Your Honor. So therefore, any direction in the statute of the project boundary doesn't necessarily resolve this issue. Yes, Your Honor. But it's a little confusing to do that. But anyway, your basic argument is project boundary is not a boundary of the obligation. Correct. It is a descriptor of the primary land or land rights relevant to the project and often includes all lands relevant and all lands equivalent to our obligations. But the riparian rights cited in the requirements where the Commission specifically said we can order you to do things outside of the project boundary. And that's still an obligation to acquire rights necessary for the execution of the project. That's the same thing here. I think the Court can change that. It does. It said in the staff letter order that the project boundary does not limit the scope of Article 5. And the Commission in its hearing order did not revisit that assertion. If there are no other questions at this point, I see I'm significantly over my time. I just want to ask about the principal act, which uses project boundary and is in the second prohibition. It says any land, water, or physical infrastructure of improvement outside the project boundary is not to be considered part of the project. How do we read that? We read that to be essentially the same as the first. It's what is part of the project is defined as the project boundary. Yes, Your Honor. With respect to that land, that land is not part of the project. One way to understand that is instruction not to amend the project boundary to include any such land. But it's still the case that obligations of the licensee can extend beyond that. So, for example, downstream effects of a project are regularly considered obligations of the licensee, but that land is never considered part of the project. I interpret that as being more about which lands should be considered part of the project and within the project boundary. The next one says you can't amend the project boundary without the licensee's agreement. All of these, back to Judge Silverman's point, are ambiguous. There are multiple readings of these, which is why I think it's a tough case for the commission that they have never provided an alternative case. There's no license. There's no agreement. Thank you, Your Honor. I'd like to step back for a moment. Some of the issues of preserved reviews. And the first thing is whether there's a license violation. I'd like to start with the question of what is preserved review. And the first thing is whether there's a license violation. And the second is how the principle act applies here. Petitioners did not preserve review. The issue is whether it's appropriate for the commission to report this issue. The issue of upstream planning to the U.S. That does not appear in the preserved review. And in fact, it is appropriate for the commission to report the issue of upstream planning to a broader and more comprehensive proceeding in which we consider all issues related to the license including upstream planning. That doesn't answer the question as to whether there's been a violation of the existing license. That's correct, Your Honor. That's why I'm concerned about it. Are you in favor? I wish I was, Your Honor. It's a non-statement. Those black holes are not important. Your Honor, I would not say that there is an issue of any kind. It is the commission that has considered the issue of upstream planning in the first place. It's not important. Why do you think it doesn't? It's not for the future. Yes, Your Honor. And that was back in the 70s. Okay. What it ought to be is the process of making this examination requires further study of upstream conditions. And the commission has already made a decision on determination. The comprehensive study will get to the causes of the flooding. That study is going to take several years. And the time that it takes to file the commission already ordered the study to occur. As explained in the framework, it doesn't make sense to take up this whole issue. It's an issue of upstream proceeding that is already being considered. It's already a broader proceeding. Why not, Ms. Robinson? It seems that the AT&T principle that a claim to an existing license is being violated is a distinct matter from an upcoming re-licensure. And if the commission were to do the work that it contemplates doing on the causes of the flooding in the context of the former, it could very well apply on that same study for purposes of the re-licensing. I don't think it's applicable. Look at this. The question is whether or not a challenge for the city in this case has an entitlement to get an answer to the license violation. Yes, there certainly is. The commission has handled that question. The commission has handled that question when it came here. The question was saying that there was no substantial evidence of what was caused by the flooding. Yes. How do you just ignore the Oklahoma court proceeding which extensively discussed evidence? Your record, Your Honor, that the commission did not describe it in the proceedings. Excuse me? I do not see a part of your record that the proceeding there found liability based upon the statutes. But it did not address the question of whether the license was violated. No, of course not. It did go over the evidence as to whether or not the dam overflow caused the damage. Your Honor, the Oklahoma court proceeding did consider the same studies which we did. The commission's in-kind work, the evidence of the studies, showed that there was a case of a dam. The commission looked at some of the same studies that the Oklahoma court proceeding did, but it was looking at the original process, which I don't know if that would be appropriate. Appropriate? Not on the lake surface. Not on the what? The surface of the lake. The question was whether there was caused by flooding of the town of Wyoming. Yes, Your Honor. The same issue with both proceedings. Well, at least it should have been. It was before you, before the court. I get the impression looking at the record that the court just totally ignored the evidence of flooding in the town of Wyoming. The commission explains, in the hearing ordered to August 13 and 15 of August 21-24 dated April 1995-1998, that it was familiar with the evidence presented, that it was familiar with the evidence presented in the court. And we have seen in previous times in the court's decisions, it was clear that there was litigation in the state of Oklahoma. But there's no, I mean there's not any discernible response to it. And it's actually quite odd procedurally. The commission then adverts to an assertion or allegation by the authority that it disputed whether the project caused flooding. But, that's been very out of line. The city comes forward with evidence referring to two studies. A watermark study, a hollow study, a text study. And look, we have studied, at least at the time of litigation matter, conclude that the flooding of the city is caused by the project. And then Burr seems to hear the authority in response saying, we disagree. And accept that as an absence of rational evidentiary showing on the city's part. Which should things do not, not go wrong. What's your response to this? Characterizing it? Procedure, it just seems arbitrary. To us that would conclude it. We have plenty of time. It's just our obligation to apply the law. And if the law requires that this be addressed as a complaint and not rolled into a future prospective proceeding, then it's, that's what we do. Whether it turns out to be convenient. But the law does not require that this be addressed as a complaint. Increment of water level would cause flooding. And the city's response says, you know, no, the flooding caused whether that additional increment is permitted or not. And for them, reportedly, to admit it's the unwilling city. He is, I wouldn't ask him to do it every day. Yes. There's nothing we can do about that now. What did you just say? The commission has wasted time. It's not a question of wasting time, it's a question of whether you've satisfied your obligation. There's a challenge to the existing license obligation, and the challenge is before you. And the only question is whether you're obliged to describe it or not. For instance, I don't know if Judge Fuller did what you did. There is nothing that the commission couldn't have done right in the complaint or any orders that it had not already done in establishing the licensing process laying in its memory. And Hawaii, who studied the commission itself, said in a study of them, J.H. Simpson, received, there's the issue of what was causing the delay. I'm having trouble following, and it just seems like maybe we're talking past each other. You spent quite a bit of the briefing talking about how this was the first, finest division. I take that to be the division that deals with whether an existing license is being applied or not. If that's an answer in and of itself, if an applied division finds non-compliance, what happens? Then there would be some opportunity. Right. It wouldn't automatically be rolled into an upcoming new license. I know your position is that it could be. I'm asking whether it's automatic. Let's say this was 15 years before the license was due to be considered. Would the compliance division, they would seek to enforce? In what kind of, how do they do that? In this case, had the compliance division not just populated the claimant that there was a license, that there was a license application, and that license was formed, I think the compliance division would have, it would have done a variety of things. It would have required the licensee to require additional land rights. It would have required a brief convenience. It would have required a consultation with all of their peers. But I don't mean to be indefinite, but we couldn't do without it. I think I can say there's a great deal of compliance that should be there. I believe you. You said but for the Pensacola Act. I don't take the order to rely particularly on the Pensacola Act. No, you're right. It doesn't. Okay. It serves only that. It serves only that. Even if it had the permission to present the license violation, here at the Pensacola Act, here's what it would be. So it's an alternative. I just put the permission to be taken in an even more modest position in that it doesn't argue that 7612, in the briefing anyway, provides an independent basis to affirm. It says only that it didn't affect the outcome of the agency's proceedings. It wasn't harmful to several peers. Is that the commission's position? The commission's position is that the Pensacola Act is not necessary. What was this line? What is the exact line? The folks in dealing with the Pensacola. Yes. Thank you.
judges: Henderson, Pillard, Silberman